IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALANTIR TECHNOLOGIES, INC., <br>     Plaintiff, <br>   v. <br> PALANTIR.NET, INC., <br>     Defendant. | No. C 10-04283 CRB <br><br> **ORDER DENYING MOTION FOR DEFAULT JUDGMENT AND GRANTING MOTION TO DISMISS** |

Plaintiff Palantir Technologies Inc. and Defendant Palantir.net accuse each other of violating the settlement agreement they reached in their 2008 trademark dispute. Now pending are two motions, one brought by each party. Plaintiff Palantir Technologies Inc. prevails on both.

**I.   BACKGROUND**

In mid-2007, Plaintiff Palantir Technologies Inc. brought suit against Defendant Palantir.net seeking a declaratory judgment that its use of the PALANTIR mark did not infringe on Defendant's trademark rights. See generally Cmplt., dckt. no. 1. Defendant counterclaimed, alleging that, among other things, Plaintiff violated sections 43(a) and 32(1) of the Lanham Act. See RFJN Ex. A at 4-5. Defendant asked the Court to permanently enjoin Plaintiff from making use of a mark confusingly similar to Defendant's mark. Id. at 9. In January 2008, this Court granted a preliminary injunction on behalf of Defendant, noting

that "the parties' only dispute is whether [Plaintiff's] use of 'palantir' is likely to cause confusion.'" See Case No. 07-3863, dckt. no. 77 at 4.  Then, in February 2008, the parties entered into a settlement.  See Case No. 07-3863, dckt. nos. 88, 94.

Pursuant to the settlement agreement, Plaintiff was to make payments to Defendant and add disclaimers about its name to some of its materials.  See MTD at 3.  In exchange, Plaintiff was permitted to use the "PALANTIR" mark with Defendant's permission and even Defendant's help.[1]  See Opp. to MTD Ex. A ¶¶ 8-10 (settlement agreement).  The settlement agreement included the following release: ". . . PNI [Defendant] . . . hereby releases and discharges PTI [Plaintiff] . . . from any and all debts, liabilities and obligations arising out of or in any way connected with: (a) The Lawsuit; and (b) Any and all claims that exist as of the date of this Agreement."  Opp. to MTD Ex. A ¶ 13 (emphasis added).  The settlement agreement also included a second release:

> PNI [Defendant] and PTI [Plaintiff] each acknowledge that there is a risk that subsequent to the execution of this Agreement, it may discover, incur or suffer claims which were unknown or unanticipated at the time this Agreement was executed, including, without limitation, unknown or unanticipated claims which arise from, are based on, or are related to the pending Lawsuit or some aspect thereof; which if known by it on the date of this Agreement being executed, may have materially affected its decision to execute this Agreement.  PNI and PTI each expressly assume the risk of such unknown and unanticipated claims and agree that the release provided in this Agreement applies to such claims.
>
> Id. ¶ 15 (emphasis added).

The settlement agreement was executed, and, at the parties' request, this Court ordered "all claims in this lawsuit" dismissed with prejudice.  See dckt. no. 92.  Following settlement and dismissal, and triggered by the USPTO's preliminary objection to Plaintiff's trademark application, the parties entered into a Consent to Use and Registration Agreement reaffirming their belief that the use of their respective marks was not likely to cause any confusion.  MTD at 4; see also RFJN Ex. C at 2.

In August 2010, Defendant formally asked the USPTO to cancel Plaintiff's trademark registration.  MTD at 1; RJN Ex. C.  Defendant asserted in this request that "[s]ince obtaining its registration, [Plaintiff] has refused to cooperate and consult in good faith with

---

[1] Defendant was to "execute such consents as may be needed to allow [Plaintiff's] application to mature to registration."  Opp. to MTD Ex. A ¶¶ 9-10.

2

regard to instances of confusion that have occurred." Id.  Defendant cited two instances in which emails intended for Defendant were mistakenly sent to Plaintiff. Id.

Plaintiff then filed suit against Defendant in September 2010, alleging breach of the parties' settlement agreement and related consent agreement, as well as breach of the covenant of good faith and fair dealing.  MFDJ at 2.  In October 2010, Defendant served its Answer, Affirmative Defenses, and Counterclaims alleging: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) contract reformation; (4) unfair competition under §43(a) of the Lanham Act; (5) violation of §32(1) of the Lanham Act; and (6) common law unfair competition.  Id.; see also dckt. no. 21 at 26-27.  Plaintiff now moves to dismiss the Lanham Act counterclaims, see dckt. no. 27, and Defendant moves for default judgment, see dckt. no. 28.

## II.   ANALYSIS

### A.   Motion for Default Judgment

Defendant Palantir.net seeks a default judgment against Plaintiff Palantir Technologies, Inc. and in favor of Defendant on counterclaims I-III and VI.  MFDJ at 2. Defendant argues that, although Plaintiff filed a Motion to Dismiss the Lanham Act counterclaims, that Motion left the other four of Defendant's counterclaims unaddressed. Id. at 2-3.  Specifically, the Motion to Dismiss asserted that Plaintiff was "not moving to dismiss the contract-based claims." Id. at 3 (citing MTD at 9).  Defendant asserts that under the Federal Rule of Civil Procedure 12(1)(B), Plaintiff had 21 days in which to file an answer or motion, and because it failed to do so as to four of the counterclaims, Defendant is entitled to an order of default on those counterclaims. Id. at 3.

Defendant is not so entitled.  This Court has held that when a party moves to dismiss certain claims, but does not answer or move to dismiss others, the party has not admitted the allegations in the other claims.  See Batdorf v. Trans Union, No. 00-0501(CRB), 2000 WL 635455 at *4-5 (N.D. Cal. May 8, 2000).  In that case, the Court explained, "[t]he filing of a motion to dismiss the other causes of action enlarged the time for [the defendant] to respond to the entire complaint, including those causes of action it did not move to dismiss." Id. at

3

1  *5; see also Pestube Sys., Inc. v. Hometeam Pest Defense, LLC, No. 05-2832-PHX-MHM,
2  2006 WL 1441014, at *7 (D. Ariz. May 24, 2006) (collecting cases within the Ninth Circuit
3  that also so hold, and characterizing this as the "majority rule"). Defendant even
4  acknowledges that this is "the current majority rule," Reply to MFDJ at 2, and its argument
5  for rejecting that rule is simply that Plaintiff's "failure to answer cannot be deemed
6  inadvertent," Reply to MFDJ at 4. But Plaintiff's failure to answer need not have been
7  inadvertent– Plaintiff was under no obligation to answer.

8  Accordingly, the Motion for Default Judgment is denied. The Court declines to award
9  sanctions to Plaintiff based on this Motion.

### B. Motion to Dismiss

Next, Plaintiff moves the Court to dismiss Defendant's two counterclaims brought under the Lanham Act. Plaintiff asserts that these counterclaims are barred by the settlement agreement, and/or that these counterclaims are barred by res judicata. However one characterizes the claims, Plaintiff is correct.

#### 1. Settlement Agreement

Plaintiff argues that Defendant's Lanham Act counterclaims are barred by the release in the settlement agreement. MTD at 7. California has a policy in favor of enforcing settlement contracts. See MWS Wire Indus., Inc. v. California Fine Wire Co., Inc., 797 F.2d 799, 802 (9th Cir. 1986) ("courts of California regard a settlement agreement as tantamount to a judgment"). So long as a release is "clear, explicit and comprehensible in each of its essential details," and "read as a whole . . . clearly notif[ies] the prospective releasor . . . of the effect of signing the agreement," it is valid and enforceable. See Baker Pac. Corp. v. Suttles, 220 Cal. App. 3d 1148, 1153 (1990).

The rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 18 (1995). Courts must look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. Id. (citing Cal. Civ. Code § 1638; Reserve Ins. Co. v. Pisciotta, 30 Cal.3d 800, 807 (1982)).

4

1 In searching for a plain meaning, a court is to interpret the language of an agreement in its
2 "ordinary and popular sense, unless used by the parties in a technical sense. . . ." Id. (citing
3 Cal. Civ. Code § 1644). A provision will be considered ambiguous when it is capable of two
4 or more constructions, both of which are reasonable. Bay Cities Paving Grading, Inc. v.
5 Lawyers' Mut. Ins. Co., 5 Cal. 4th 854, 867 (1993). Language in a contract must be
6 interpreted as a whole, and in the circumstances of the case, and cannot be found to be
7 ambiguous in the abstract. Id. Courts will not strain to create an ambiguity where none
8 exists. Reserve Ins. Co., 30 Cal.3d at 807.
9      Here, the settlement agreement specifically released "[a]ny and all claims that exist as
10 of the date of this Agreement," Opp. to MTD Ex. A ¶ 13; it then recognized "that subsequent
11 to the execution of this Agreement, [the parties] may discover, incur or suffer claims which
12 were unknown or unanticipated at the time this Agreement was executed," which were
13 "related to the pending Lawsuit," and it specifically released those claims, id. ¶ 15 (emphasis
14 added). Defendant argues, however, that this release does not apply to future claims– only
15 "to claims extant prior to the execution of the Settlement Agreement." Opp. to MTD at 3.
16 Defendant argues that the phrase "which if known by it on the date of this Agreement being
17 executed, may have materially affected its decision to execute this Agreement" shows that
18 the release only dealt with claims leading up to the execution date. Id. This is not a
19 reasonable construction. That phrase is simply another way of saying "which the parties
20 would have considered material if they had known about them." In other words, the phrase
21 relates to materiality, not timing. It cannot mean that the paragraph relates only to claims in
22 existence at the time of execution, or else a party could not "incur or suffer" claims
23 subsequent to execution. Further, the word "unanticipated" would mean the same thing as
24 "unknown." See Restatement (Second) of Contracts § 203(a) cmt. b (1979) ("Since an
25 agreement is interpreted as a whole, it is assumed in the first instance that no part of it is
26 superfluous"). That the paragraph does not use the phrase "future claims" is also of no
27 consequence; while Defendant points to cases citing releases that include such language, see
28 Opp. to MTD at 8-11, Defendant points to no cases that require such language.

5

To the extent Defendant's Lanham Act counterclaims were incurred or suffered subsequent to the execution of the settlement agreement, there is no dispute that those counterclaims are related to the parties' settled lawsuit; both involve allegations of confusion over the PALANTIR mark. Accordingly, those claims were released, and should be dismissed.[2]

### 2. Res Judicata

In the alternative, even if the settlement agreement did not pertain to future claims, Plaintiff argues persuasively that the counterclaims are not new claims, but old ones. MTD at 8 ("[Defendant] has brought counterclaims that not only 'relate in some aspect' of the Settled Case, but attempt to revive the exact same claims it brought, settled, and released in that case."). As such they are also barred.

In order for claim preclusion to apply, there must be "(1) an identity of claims in the two actions; (2) a final judgment on the merits in the first action; and (3) identity or privity between the parties in the two actions." Frank v. United Airlines, Inc., 216 F.3d 845, 850 (9th Cir. 2000). Here there is no question that the parties in the two actions are the same. The claims are also identical. In the settled case, Defendant counterclaimed, alleging that Plaintiff violated sections 43(a) and 32(1) of the Lanham Act. See RFJN Ex. A at 4-5. The new counterclaims at issue in this motion allege that Plaintiff violated sections 43(a) and §32(1) of the Lanham Act. See dckt. no. 21 at 26-27. Though the new counterclaims are framed as relating to "the history of [Plaintiff's] failed compliance with the [settlement agreement] . . . . reflect[ing] its unwillingness or inability to avoid confusion through use of disclaimers," those claims still pertain to false designation of origin (count VI) and willful and deliberate infringement (count V) based on Plaintiff's use of the PALANTIR mark. See dckt. no. 21 at 26-27. That is precisely what the earlier counterclaims alleged in the settled case. See RFJN Ex. A at 4-5. That the new counterclaims assert additional instances of confusion does not change this conclusion. See Waldman v. Village of Kiryas Joel, 207 F.3d

---

[2] The Court notes that Plaintiff has not moved to dismiss Defendant's contract-based claims, which are based on violation of the settlement agreement. MTD at 9.

105, 113 (2d Cir. 2000) (additional instances of what was previously asserted do not create new cause of action or save claims from claim preclusion); see also Jenkins v. Cal. Fed. Loan Ass'n, No. 05-02946(CRB), 2006 WL 3000742, at *3 (N.D. Cal. Oct. 30, 2006) ("action that merely alleges new facts in support of a claim that has gone to judgment in a previous litigation will be subject to claim preclusion") (internal quotations and citation omitted).

Those claims were released, Opp. to MTD Ex. A ¶ 13, and-- satisfying the remaining element for claim preclusion-- this Court dismissed "all claims in [that] lawsuit" with prejudice, see Case No. 07-3863, dckt. no. 92. Accordingly, even if the settlement agreement did not release future claims, Defendant's Lanham Act counterclaims are barred by claim preclusion and are dismissed.

**III.  CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant's Motion for Default Judgment and GRANTS Plaintiff's Motion to Dismiss the two Lanham Act counterclaims.

**IT IS SO ORDERED.**

Dated: January 7, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE